UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

| | |
|---|---|
| 3501 GEORGIA AVENUE, LLC<br>3501 Georgia Avenue<br>Washington, DC 20010,<br><br>   Plaintiff,<br><br>vs.<br><br>AMGUARD INSURANCE COMPANY,<br><br>   Defendant | Case No.:<br><br>**JURY TRIAL REQUESTED** |

  Plaintiff 3501 Georgia Avenue, LLC ("Plaintiff"), as and for its Complaint against AmGuard Insurance Company ("AmGuard Insurance"), alleges as follows:

  1. Elias Mulugeta, an Ethiopian immigrant, is a highly industrious, responsible and diligent business owner. He worked hard to save money and, eventually, through Plaintiff, purchased a small commercial property in Northwest D.C., with which he supports his family.

  2. When fire broke out at the property on May 28, 2021, Mr. Mulugeta had every reason to believe that Plaintiff's Commercial General Liability policy would cover the damages. He had renewed his policy nine months earlier, had paid all premiums when billed, and had never received any notice that his policy had been terminated or non-renewed.

  3. Yet, as it turned out, defendant AmGuard Insurance had surreptitiously altered the policy term from one year to six months, without informing Plaintiff, or its broker, or its bank; and then, after the purported six months had expired, allowed the policy to lapse, without any notice to them either. When Plaintiff timely turned to its insurer for coverage, AmGuard Insurance disclaimed coverage entirely, asserting that no policy was in force.

4. The law protects small policyholders like Plaintiff from the predations of large insurance companies, however, by requiring, among other things, that when the insurer makes important changes to the terms of the insurance policy, such as a change to the policy term, then the changes must be specifically identified to the policyholder. The law also requires that if a policy is non-renewed, then notices of non-renewal must be timely delivered to the policyholder and broker. The law further provides that when an insurer fails to provide these required notices, the policy change and the non-renewal are ineffective.

5. Nevertheless, AmGuard Insurance refuses to provide coverage. Without insurance coverage, there is no money to bring the property back to a state of full repair, and no revenue stream from which to pay the mortgage.

6. Plaintiff therefore brings this action seeking damages, including for property damage, business interruption, loss of value and all other reasonably foreseeable damages. Plaintiff also seeks punitive damages for AmGuard Insurance's willful violation of basic insurance underwriting norms that had the effect of deceiving Plaintiff into going without insurance coverage.

## The Parties

7. Plaintiff 3501 Georgia Avenue, LLC is a District of Columbia limited liability company.

8. Defendant AmGuard Insurance Company is a corporation organized in the State of Pennsylvania, with its headquarters in 39 Public Square, Wilkes-Barre, Pennsylvania.

## Jurisdiction and Venue

9. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. §§ 1332, as the parties are diverse, and Plaintiff's claims exceed $75,000.

10.     Venue in this Court is appropriate under 28 U.S.C. § 1391(b)(2), as the property subject to the property coverage claim is located in this District.

## Facts

### A. Background

11.     The property at 3501 Georgia Avenue is a 4,914 square foot building on a corner lot on Georgia Avenue, between Park Road and Newton Place.  The building hosts a ground floor restaurant, a bakery, and three residential tenants.  The ground floor restaurant does business under the name "Mister Rotisserie Chicken."

12.     The property generates approximately $150,000 annually in rental income, with a mortgage, taxes and water bills of approximately $50,000 annually.

13.     The property is subject to a mortgage held by Sonobank.  The mortgage requires that Plaintiff have property insurance coverage in place.

14.     The property is owned by 3501 Georgia Avenue LLC, which in turn is owned by Mr. Elias Mulugeta.

### B. Plaintiff Repeatedly Purchased an AmGuard Insurance Policy with a One-Year Term

15.     Effective August 8, 2017, AmGuard Insurance issued to Plaintiff Policy Number THBP823700 for a one-year term (with renewals, the "Policy"). The Policy provided coverage for property damage from fire up to the appraised value of the property. For the policy term beginning in August 2020, the policy had a limit of liability of $709,802, with an inflation protection factor that increased coverage by 4% annually, pro-rated over the coverage term.   The Policy also included unlimited coverage for Business Interruption and Extra Expense for up to one year.

16. A copy of the policy form corresponding to the form identified in the declarations is at Exhibit A. Renewal documents for policy year 2017-18 is at Exhibit B, and for 2020-21 is at Exhibit C. A policy form identifying the bank mortgagee is at Exhibit D.

17. The Policy was paid through an automatic withdrawal feature with front loaded payments. Payments were withdrawn every month during the early portion of the policy term, but no payments were withdrawn at the end of the policy term. Money was therefore withdrawn unevenly, and the absence of a bill for insurance in a particular month did not indicate that anything was remiss.

18. The Policy was renewed in 2018 for a term of one year, and again in 2019 for a term of one year.

19. Each year upon renewal, Plaintiff received a mailing containing multiple documents. These documents included a series of approximately 15 endorsements identifying changes to the base Policy.

20. These documents purported to indicate changes to the Policy, when they were in reality the same notices, sent year after year.

C. **AmGuard Insurance Purportedly Changed the Policy Term, Without Providing Any Notice.**

21. Upon renewal for the 2020-21 policy term, Plaintiff and its broker received a 43-page renewal package from AmGuard Insurance. The 43-page package contained the same endorsements that AmGuard Insurance had sent in previous years.

22. The package also contained a cover letter. The cover letter stated:

- Your **Policy Number** Is THBP197730
- Your **Insurance Carrier** Is AmGUARD Insurance Company
- Your Policy **Effective Date** Is 08/08/2020

4

23. Thus, the cover letter identified the Policy effective date, without mentioning that the Policy term had been changed.

24. The 43-page package of materials included at least fifteen documents warning, in bold-faced 18-Point type, that: "THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY."  These endorsements addressed such issues as a Cannabis Exclusion, and various endorsements relating to Acts of Terrorism.

25. None of these bold-faced warnings was true.  The package actually contained the same set of endorsements that AmGuard Insurance had previously provided to Plaintiff in each of the previous three years.

26. There was however one change to the Policy that was of crucial importance, but for which no notice appeared.  About midway down the fifth page of the materials, the Policy term was listed as "From August 8, 2020 to February 8, 2021."  The indicated date was the only place in which the change in policy terms was referenced.  No other notice was provided.

27. It is standard practice in the insurance business to underwrite Commercial General Liability policies on a one-year basis.  Plaintiff had a reasonable expectation that the Policy would be renewed for a one-year term.

28. Other than the change to the Policy term itself, neither Plaintiff nor its broker ever was informed of this crucial change in the Policy.  While AmGuard Insurance was burying them in a blizzard of false warnings that it needed to "Read . . . Carefully" fifteen documents describing non-existent Policy changes related to such matters as Acts of Terrorism and a Cannabis Exclusion, it did not provide any notice at all that the Policy was set to expire six months early.

**D. AmGuard Insurance Purported to Non-Renew the Policy but Did Not Provide Any Notice to the Policyholder, Broker or Bank**

29. Having surreptitiously altered the Policy term, AmGuard Insurance compounded its violation of duty to Plaintiff by failing to provide notice at the conclusion of the six-month period that the Policy was being non-renewed.

30. The District of Columbia Municipal Regulations explicitly require that an insurer notify the policyholder and broker in writing upon non-renewal. They also impose a remedy of automatic renewal for failure of the insurer to comply.

31. The Regulations provide:

> Unless the insurer complies with each of the conditions specified in this section, a policyholder has a right to renewal for an additional period of time equivalent to the expiring term if the agreed term is a year or less, or for one year if the agreed term is longer than one year.
>
> 301.2 Notice of a cancellation or nonrenewal shall be given by the insurer to the insured at least thirty (30) days prior to the proposed date of cancellation, or in the case of nonrenewal, thirty days prior to the end of the policy period.
>
> 301.3 The notice shall be mailed or delivered in a manner reasonably designed to assure delivery to the last known address of the insured. The envelope containing the notice shall be labelled "Important Insurance Notice" in at least eighteen (18) point or larger type. . . .
>
> 301.5 At least five (5) days before sending the notice of cancellation or nonrenewal referred to in §§ 301.1 - 301.4 the insurer shall notify the insurance agent or broker who wrote the policy being nonrenewed or cancelled.

32. The Policy further requires AmGuard Insurance to provide written notice to the mortgageholder at least 10 days before the expiration date of the Policy.

33. Sonobank is identified as a mortgageholder under the Policy.

34. Plaintiff never received notice of non-renewal of the Policy.

35. Plaintiff's broker has advised it that it never received notice of non-renewal of the Policy.

36. Plaintiff's bank has informed it that it never received notice of non-renewal of the Policy.

37. If Plaintiff directly, or through its broker, or bank, had received notice of non-renewal, it would have secured replacement coverage.

**E. Plaintiff Suffered Significant Fire Damage Within One Year of His Last Renewal**

38. On May 28, 2021, a fire broke out in the kitchen of the ground floor tenant, Mister Rotisserie Chicken LLC.

39. The fire extended to the second floor and roof, causing extensive property damage. Estimates to repair the damage are well in excess of $400,000.

40. In addition, the property became uninhabitable, and Plaintiff has suffered damage from the interruption of his business in excess of $12,000 each month.

41. Plaintiff also has incurred costs associated with securing the property while it awaits the insurance proceeds it needs to pay for necessary repairs.

**F. AmGuard Insurance Refused to Provide Coverage, Based on the Purported Non-Renewal of the Policy.**

42. Plaintiff timely provided notice to AmGuard Insurance of the fire loss.

43. AmGuard Insurance declined to provide coverage, based on the purported non-renewal of the Policy.

44. Plaintiff has repeatedly requested that AmGuard Insurance provide proof of mailing of any purported non-renewal notice.

45. In response, AmGuard Insurance has produced a purported notice of non-renewal, which contains a copy of a pre-printed address label.

46. AmGuard Insurance has not produced any evidence that the purported notice ever was sent, or that if it had been sent, the date on which it was sent, or that it would have contained

the necessary 18-point label that the enclosed is an "Important Insurance Notice." There is no evidence at all that the broker or the bank were notified.

47. Plaintiff never received a notice of non-renewal. Its broker and bank both disclaim ever having received such a notice.

## As and For Plaintiff's First Cause of Action

## Breach of Contract

48. Plaintiff repeats and realleges the allegations previously set forth herein.

49. AmGuard Insurance's purported change in the 2020-21 Policy term from one-year to six-months was made without providing Plaintiff sufficient notice, and was therefore ineffective.

50. AmGuard Insurance's purported non-renewal of the Policy upon the purported termination in February 2021 was made without required notice and therefore was ineffective.

51. AmGuard Insurance is liable for foreseeable damages arising from its failure to cover Plaintiff's fire loss for the May 28, 2021, fire.

52. AmGuard Insurance's actions in failing to provide notice of the change in policy term, failing to provide notice of non-renewal, and failing to provide coverage in the face of the relevant law and regulations amount to a willful breach of contract, and a breach of duty to Plaintiff in a manner that is akin to a willful tort.

### As and For Plaintiff's Second Cause of Action

### Declaratory Relief

53. Plaintiff repeats and realleges the allegations previously set forth herein.

54. Plaintiff is entitled to a declaratory judgment declaring that its claims are covered under the Policy.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all of its claims.

**WHEREFORE** Plaintiff prays for judgment against Defendants as follows:

a. Damages in the amount of property damage, business interruption damage, extra expense damage, and all other reasonably foreseeable damages arising from AmGuard Insurance's breach of contract;

b. a declaration that Plaintiff's claim is covered under the Policy;

c. an award of attorney's fees and costs;

d. prejudgment interest;

e. post judgment interest;

f. punitive or exemplary damages; and

g. such other and further relief as this Court may deem just and proper.

September 24, 2021

/s Martin Bienstock
Martin Bienstock (No. 1018852)
BIENSTOCK PLLC
1629 K. St. NW, Ste. 300
Washington, DC 20006
(202) 908-6601
mbienstock@bienstockpllc.com